# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| QUANTUM ENTERTAINMENT, LTD., | : | | |
| | : | | |
| Plaintiff, | : | | |
| | : | | |
| v. | : | Civil Action No.: | 07-1295 (RMU) |
| | : | | |
| UNITED STATES DEPARTMENT | : | Document Nos.: | 16, 17 |
| OF THE INTERIOR, | : | | |
| BUREAU OF INDIAN AFFAIRS, | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

### GRANTING IN PART AND DENYING IN PART THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## I.   INTRODUCTION

The plaintiff, Quantum Entertainment Limited ("QEL")[1], and the defendant, the U.S.

Department of the Interior ("DOI") Bureau of Indian Affairs ("BIA"), filed cross-motions for

summary judgment on the question of whether the DOI's Interior Board of Indian Appeals ("the

Board") violated the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701, *et seq.*, by

promulgating a decision adverse to the plaintiff.  Stemming from the administrative review of a

contract to which the plaintiff was a party, the Board determined that, under the applicable

statute, the contract required the BIA's approval in order to be valid.  The Board further

concluded, that because the plaintiff failed to obtain the BIA's approval, the contract was

invalid.  Because the court determines that the Board failed to articulate a reasoned basis for

certain determinations central to its holding, the court grants in part the plaintiff's motion for

---

[1] The plaintiff, QEL, is a New Mexico limited liability company that, among other things, provides consulting and management services to gas distribution businesses.  Admin. Record ("AR") at 0131.

summary judgment and remands the Board's decision that the plaintiff's contract was invalid. The court denies the parties' motions in all other respects.  Accordingly, the court remands this case to the Board to explain its decision consistent with this opinion.

## II.   BACKGROUND

### A.   Factual History

On August 1, 1996, the plaintiff entered into a management agreement ("Agreement") with the Santo Domingo Pueblo ("Pueblo")[2] and Kewa Gas Limited ("Kewa").[3]  AR at 0131. The Agreement was for an initial term of ten years, during which time the plaintiff managed a gas distribution business owned by Kewa on lands leased by Kewa from the Pueblo.  *Id.* at 0046. The agreement was never submitted to or approved by the Secretary of the DOI.  AR at 0833-34. The parties to the Agreement intended to benefit from a tax exemption available to Indian tribes. *Id.* at 0046, 0827.  The parties to the Agreement performed under the Agreement until 2003 when the governor the Pueblo sought BIA review of the Agreement, beginning the administrative process culminating in this lawsuit.  *Id.* at 0828, 0052.

### B.   Legislative, Administrative and Procedural History

Congress first enacted in 1871, as part of an appropriations bill, and in 1872, as permanent legislation, what later was codified at 25 U.S.C. § 81 ("Old Section 81").  *Id.* at 0828 & n.2.  From 1871 until 2000, with minor exceptions not relevant here, the text of Old Section 81 remained substantially unchanged as follows:

---

[2]     The Pueblo is a federally recognized Indian tribe and owns 100% of the issued and outstanding shares of capital stock of Kewa.  AR at 0042, 0055, 0131.

[3]     Kewa is a corporation incorporated under the laws of the Pueblo and registered with the State of New Mexico as a foreign, for-profit corporation.  AR at 0055-0056, 0084.

No agreement shall be made by any person with any tribe of Indians . . . for the payment or delivery of any money or other thing of value . . . in consideration of services for said Indians relative to their lands . . . unless such contract or agreement be executed and approved [by the Secretary of the DOI ("Secretary")] . . . . All contracts or agreements made in violation of this section shall be null and void, and all money or other thing of value paid to any person by any Indian, tribe, or any one else, for or on his or their behalf, on account of such services, in excess of the amount approved by the . . . Secretary for such services, may be recovered by suit in the name of the United States.

25 U.S.C. § 81 (1994).

Congress enacted Old Section 81 out of concern that "claims agents and attorneys working on contingency fees [were] routinely swindl[ing] Indians out of their land, accepting it as payment for prosecuting dubious claims against the federal government." *United States v. Turn Key Gaming, Inc.*, 260 F.3d 971, 976-77 (8th Cir. 2001) (citing *Cong. Globe*, 41st Cong., 3d Sess. 1483, 1483-87 (daily ed. Feb. 22, 1871)); *see also id.* at 976 n.6, 977 n.7 . Congress's act of legislative protection, through the enactment of Old Section 81, stems from the federal government's trust responsibility to Indian tribes. *See* Mark A. Smith, *Contracting with Tribes under 25 U.S.C. § 81*, 20-APR PROB & PROP. 8, 10 (2006) (describing briefly the genesis and development of the federal government's moral obligation and fiduciary duty to Indian tribes).

In 2000, however, Congress amended Old Section 81 as part of the Indian Tribal Economic Development and Contracts Encouragement Act of 2000. 25 U.S.C. §§ 71, 81, 476. This "amendment" was intended to replace Old Section 81, as the changes to the text where quite substantial. *See* S. REP. NO. 106-150, at 1, 1999 WL 965424 (1999). The relevant text of 25 U.S.C. § 81 ("New Section 81"), as amended, states that "[n]o agreement or contract with an Indian tribe that encumbers Indian lands for a period of 7 or more years shall be valid unless that

agreement or contract bears the approval of the Secretary of the Interior or a designee of the Secretary." 25 U.S.C. § 81(b).

The legislative history surrounding the enactment of New Section 81 illustrates that Congress was concerned that "many provisions of [Old Section 81] have come to be antiquated and unnecessary," H.R. REP. NO. 106-501, at 2 (2000), *as reprinted in* 2000 U.S.C.C.A.N. 69, and their interpretation unpredictable, *see* S. REP. NO. 106-150, at 5, 1999 WL 965424 (1999). Congress acknowledged that "Indian tribes, their corporate partners, courts, and the [BIA] have struggled for decades with how to apply [Old] Section 81 in an era that emphasizes tribal self-determination, autonomy, and reservation economic development." *Id.* at 2. To address these concerns, Congress narrowed the scope of contracts that required the Secretary's approval under New Section 81. *Id.* at 9. Congress, however, expressed no intent regarding the application of New Section 81 to contracts formed before its enactment.

On March 28, 2003, the governor of the Pueblo, Everett Chavez, wrote a letter to the BIA requesting its review of the Agreement in accordance with the terms of the Agreement and the BIA's role "[a]s the federal trust agency[.]" AR at 0052. Governor Chavez requested the review because he strongly believed that the Agreement was "far too lucrative" for the plaintiff. *Id.* On October 23, 2003, the acting regional director of the BIA, Ronald Toya, informed Governor Chavez and the plaintiff that upon review of the Agreement, the BIA concluded that it was never legally valid. *Id.* at 0036-0041. Specifically, the BIA determined that (1) the Agreement was subject to review under Old Section 81 because it was formed before the enactment of New Section 81; (2) the Agreement required approval by the BIA, as the designee of the Secretary of the DOI; (3) the retroactive approval of the Agreement would not be in the best interest of the

4

Pueblo; and (4) because the Agreement was not approved by the BIA, it "has never been legally valid and any monies received by [the plaintiff] pursuant to [the Agreement] were unauthorized." *Id.* at 0036-0041.

The plaintiff appealed the BIA's decision to the Board, which issued its opinion on March 27, 2007. *Id.* at 0826. The Board made two determinations on the merits of the appeal. First, it affirmed the BIA's "choice of law to review the Agreement under Old Section 81 rather than under [New Section 81.]" *Id.* at 0826, 0840-0842. Second, it affirmed in part and abstained in part regarding the BIA's determination that Old Section 81 required the BIA's approval as the designee of the Secretary of the DOI. *Id.* at 0826, 0842-0848. In reviewing the merits of the BIA's decision that the Agreement was within the scope of contracts that required approval under Old Section 81, the Board applied the following three-part test: "(1) is the Agreement with a 'tribe of Indians,' (2) is the Agreement for the payment or delivery of any money or other thing of value in consideration of services for the tribe, and (3) is the Agreement 'relative to' Indian lands?" *Id.* at 0842. The Board affirmed the BIA's decision that the Agreement was with an Indian tribe, concluded that the parties did not dispute the second element, and "abstain[ed] from making a determination regarding the third element because of collateral judicial proceedings involving the [DOI]." *Id.* at 0842.

On July 20, 2007, the plaintiff sought review of the Board's decision in this court. The parties filed cross-motions for summary judgment disputing the legal propriety of the Board's order and opinion. The court now turns to the resolution of these issues.

### III.    ANALYSIS

#### A.    Legal Standard for Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

The nonmoving party may defeat summary judgment through factual representations made in a sworn affidavit if he "support[s] his allegations . . . with facts in the record," *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C.

Cir. 1993)), or provides "direct testimonial evidence," *Arrington v. United States*, 473 F.3d 329,

338 (D.C. Cir. 2006).  Indeed, for the court to accept anything less "would defeat the central

purpose of the summary judgment device, which is to weed out those cases insufficiently

meritorious to warrant the expense of a jury trial."  *Greene*, 164 F.3d at 675.

### B.   Legal Standard for Judicial Review of Agency Interpretations of Statutes

The APA requires a reviewing court to set aside agency action, findings and conclusions

that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

5 U.S.C. § 706(2)(A); *Tourus Records, Inc. v. Drug Enforcement Admin.*, 259 F.3d 731, 736

(D.C. Cir. 2001).  The Supreme Court set forth a two-step approach to determine whether an

agency's interpretation of a statute is valid under the APA.  *Chevron, U.S.A., Inc. v. Natural Res.*

*Def. Council, Inc.*, 467 U.S. 837 (1984).  This approach, commonly referred to as "*Chevron*

deference," requires the court to first look to "whether Congress has spoken to the precise

question at issue."  *Id.* at 842.  If so, the court ends its inquiry.  *Id.*  But, if the statute is

ambiguous or silent, the second step requires the court to defer to the agency's position, as long

as it is "based on a permissible construction of the statute."  *Id.* at 843; *Sea-Land Serv., Inc. v.*

*Dep't of Transp.*, 137 F.3d 640, 645 (D.C. Cir. 1998) (holding that "[*Chevron*] deference comes

into play, of course, only as a consequence of statutory ambiguity, and then only if the reviewing

court finds an implicit delegation of authority to the agency").

"If it appears, however, that Congress did not actually have an intent regarding the

statutory construction question at issue," an agency's construction of the statute will be upheld if

its reading "represents a reasonable accommodation of conflicting policies [Congress]

committed to the agency's care."  *Page v. Pension Benefit Guar. Corp.*, 968 F.2d 1310, 1313-14

(D.C. Cir. 1992) (internal quotations omitted).  In particular, the Supreme Court has long accorded considerable weight to an executive department's construction of the statutory scheme it is entrusted to administer "whenever decision as to the meaning or reach of a statute has involved reconciling conflicting policies, and a full understanding of the force of the statutory policy in the given situation has depended upon more than ordinary knowledge respecting the matters subjected to agency regulations."  *United States v. Shimer*, 367 U.S. 374, 382 (1961); *see also Shippers Comm., OT-5 v. Interstate Commerce Comm'n*, 968 F.2d 75, 81 (D.C. Cir. 1992).

"The court need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding."  *Chevron*, 467 U.S. at 843 n.11; *see also Motor Veh. Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (explaining that "the scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency").  Instead, all that is required is that the agency's construction of the statute be reasonable.  *Chevron*, 467 U.S. at 843-44.  Accordingly, the agency action under review is "entitled to a presumption of regularity." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).

In making this inquiry, however, the reviewing court "must consider whether the [agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment."  *Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 378 (1989) (internal quotations omitted).  At a minimum, the agency must have considered relevant data and articulated an explanation establishing a "rational connection between the facts found and the

choice made." *Bowen v. Am. Hosp. Ass'n*, 476 U.S. 610, 626 (1986); *Tourus Records*, 259 F.3d

at 736; *Pub. Citizen, Inc. v. Fed. Aviation Admin.*, 988 F.2d 186, 197 (D.C. Cir. 1993) (noting

that "[t]he requirement that agency action not be arbitrary or capricious includes a requirement

that the agency adequately explain its result").  An agency action is arbitrary or capricious if

> the agency has relied on factors which Congress has not intended it to consider,
> entirely failed to consider an important aspect of the problem, offered an explanation
> for its decision that runs counter to evidence before the agency, or is so implausible
> that it could not be ascribed to a difference in view or the product of agency
> expertise.

*Motor Veh. Mfrs. Ass'n*, 463 U.S. at 43; *see also County of L.A. v. Shalala*, 192 F.3d 1005, 1021

(D.C. Cir. 1999) (holding that "[w]here the agency has failed to provide a reasoned explanation,

or where the record belies the agency's conclusion, [the court] must undo its action").  This

requirement is not particularly demanding.  *Pub. Citizen*, 988 F.2d at 197.  Nothing more than a

"brief statement" is necessary, as long as the agency explains "why it chose to do what it did."

*Tourus Records*, 259 F.3d at 737.  If the court can "reasonably discern[]" the agency's path, it

will uphold the agency's decision.  *Pub. Citizen*, 988 F.2d at 197 (citing *Bowman Transp., Inc. v.

Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974)).

### C.   The Court Grants in Part and Denies in Part the Plaintiff's Motion for Summary Judgment, Denies the Defendant's Motion for Summary Judgment and Remands the Case for Further Explanation of the Statutory Construction Claim

The court grants in part the plaintiff's motion for summary judgment by remanding the

Board's decision that the Agreement was invalid.  As explained below, this decision was

arbitrary and capricious because the Board failed to address two considerations central to its

holding:  (1) whether application of New Section 81 would have an "impermissible retroactive

effect" and (2) whether the Agreement would require the Secretary's approval under Old

Section 81.  Instead, the Board merely assumed, without explanation, the answers to these dispositive questions.

> **1.  The Board's Decision Regarding the Statutory Construction Claim Is Not Entitled to *Chevron* Deference Because It Was Arbitrary and Capricious**

The plaintiff argues that the Board did not consider relevant facts or enter relevant findings rendering its decision improper under the APA.  Pl.'s Mot. at 5.  The defendants counter that the Board "acted reasonably[ and] within [its] discretion."  Def.'s Opp. to Pl's Mot. at 4-5.

In its decision, the Board relied on the Supreme Court's resolution of the "apparent tension" between the competing rules regarding the retroactive application of statutes.  AR at 0840-0842 (basing its opinion on *Landgraf v. USI Film Prods.*, 511 U.S. 244, 278 (1994)).  In *Landgraf*, the Supreme Court explained that when a case implicates a federal statute enacted after the events giving rise to the suit, the court must consider its retroactive application through a three-part test.  *Landgraf*, 511 U.S. at 280.  First, the court must "determine whether Congress has expressly prescribed the statute's proper reach[,]" which controls its application as prospective or retroactive.  *Id.*  Second, if the statute contains no such express command, the court must then determine whether the new statute would have an *impermissible* retroactive effect.  *Id.* at 269-70, 280.  A statute has an impermissible retroactive effect when its retroactive application "would impair the rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed."  *Id.* at 280 (explaining that a statute does not have an impermissible retroactive effect "merely because it is applied in a case arising from conduct antedating the statute's enactment").  Third, if the statute would have an impermissible retroactive effect, the court should apply the traditional

presumption that the new statute "does not govern absent clear congressional intent favoring

such a result." *Id.*

Although the Board acknowledged that whether it is permissible to apply a statute

retroactively depends on the effect such application would have, it merely "assume[d], for

purposes of [its] discussion, that application of the different versions of the statute would yield

different results." AR at 0840. That is, the Board acknowledged that the application of New

Section 81 would have a retroactive effect, but it ended its inquiry there and did not determine

whether the retroactive effect would be impermissible. The Board should have explained how

the application of New Section 81 would impair the rights, increase the liability, or impose new

duties on a party to support its decision that it would be impermissible to apply the statute

retroactively. *See Landgraf*, 511 U.S. at 280.

The court does not conclude that the Board made an incorrect decision regarding the

retroactive effect of New Section 81; rather, the court concludes that the Board's decision was

incomplete, which violates the prohibition against arbitrary or capricious agency decisions. *See

Motor Veh. Mfrs. Ass'n*, 463 U.S. at 43 (defining as "arbitrary and capricious" agency decisions

that are incomplete because they fail to consider important aspects of the problem presented to

the agency); *North Carolina v. EPA*, 531 F.3d 896, 906 (D.C. Cir. 2008). Moreover, the court

cannot compensate for the deficiency in the Board's analysis by supplying a rationale that the

Board has not articulated. *Motor Veh. Mfrs. Ass'n*, 463 U.S. at 43; *see also Williams Gas

Processing-Gulf Coast Co. v. Fed. Energy Regulatory Comm'n*, 475 F.3d 319, 328-29 (D.C. Cir.

2006) (explaining that "[a]rbitrary and capricious review strictly prohibits [a court] from

upholding agency action based only on our best guess as to what reasoning truly motivated it"). Standing alone, the Board's assumption cannot satisfy the requirements of the APA.

> **2.      The Board's Decision Regarding the Secretarial Approval Claim is Not Entitled to *Chevron* Deference Because it was Arbitrary and Capricious**

Because reviewing courts are to "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned[,]" this court continues its review of the Board's decision. *Motor Veh. Mfrs. Ass'n*, 463 U.S. at 43; *see also Point Park Univ. v. Nat'l Labor Relations Bd.*, 457 F.3d 42, 49-50 (D.C. Cir. 2006) (stating that the court's "indulgen[ce] toward administrative action to the extent of affirming an order where the agency's path can be discerned even if the opinion leaves much to be desired") (internal quotations omitted).  This continued review serves the purpose of examining the Board's entire decision to see if its analysis on other issues could provide a basis for its decision to apply Old Section 81. Accordingly, the court looks to the Board's ruling that Old Section 81 requires the Secretary's approval.

The parties agree that the Secretary's approval of the Agreement is not required under New Section 81.  Joint Stipulation ¶ 2.  If the Board explained why Old Section 81 required the Secretary's approval of the Agreement, the court could consider that explanation as the reasoning by which the Board supported its prior assumption concerning the retroactive effect of New Section 81.  The Board invites this comparison by stating "that *if* the Agreement is exempt from [the Secretary's] approval under New Section 81, the application of New Section 81 would significantly change the legal consequences of the [] Agreement by rendering valid an otherwise invalid contract."  AR at 0841 (emphasis added).  The Board's reasoning on this point, however,

is also incomplete because it failed to explain how the application of New Section 81 "would significantly change the legal consequences of the [] Agreement." *Id.*

In its opinion, the Board considered whether Old Section 81 required the Secretary's approval by employing the following three-part test: "(1) is the Agreement with a 'tribe of Indians,' (2) is the Agreement for the payment or delivery of any money or other thing of value in consideration of services for the tribe, and (3) is the Agreement 'relative to' Indian lands?" *Id.* at 0842.  The Board, however, "abstain[ed] from making a determination regarding the third element because of collateral judicial proceedings involving the [DOI]." *Id.* at 0842.  The Board did "not address or express any view on the merits of this issue, and instead dismiss[ed] this portion of the appeal, [and] allow[ed] the [BIA]'s determination on this particular issue to become effective." *Id.* at 0848.

The Board's abstention from addressing whether the Agreement was "relative to Indian lands" compounds the problem with its assumption regarding New Section 81's retroactive effect.  Without a clear presentation of the Board's reasoning, the court cannot perform its reviewing function or discern the path taken by the Board in deciding that the Agreement is invalid.  *See Point Park Univ.*, 457 F.3d at 50.  The court cannot fill in critical gaps in the Board's reasoning, but can only look to the Board's stated rationale.  *See id.*  Even if the court agreed with the Board's ultimate judgment, "in administrative law, [a court] cannot sustain a 'right-result, wrong-reason' decision of an agency." *Sprint Nextel Corp. v. FCC*, 508 F.3d 1129, 1132-33 (D.C. Cir. 2007).  A reviewing court must have more than a result; it needs the agency's reasoning for that result.  *Id.* at 1132.  Accordingly, the court must remand this case to the Board so that it may fully articulate its reasoning.  *Id.* at 1133; *see also Point Park Univ.*, 457 F.3d

13

at 49 (determining that an agency's silence was insufficient for the court's review and remanding the case to the agency's internal appellate board "to provide a more fulsome explanation of its decision").

## IV.    CONCLUSION

For the foregoing reasons, the court grants in part and denies in part the plaintiff's motion for summary judgment and denies the defendant's motion for summary judgment.  The court remands this case to the Board to explain the basis for its decision in accordance with this opinion.  An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 19th day of February 2009.


RICARDO M. URBINA
United States District Judge